## LEONARD RICHARDS

*v.*

## ROBERT L. SHAW and THE SECOND NATIONAL BANK OF JERSEY CITY.

### [Decided September 7th, 1910.]

1. To justify a bill of review on the discovery of new matter, it must appear not only that the matter is new, but that the party could not have known thereof before the trial by the use of reasonable diligence.

2. A decree giving affirmative relief to defendant on an answer alone will not be reversed on appeal merely because a cross-bill was not filed, where the case was fully tried on the merits and the evidence warrants the decree.

3. Where the court gave affirmative relief to defendant on his answer alone, it will open the decree on application and make a new one on the evidence admitted on giving defendant the right to file a cross-bill, and the new decree will be so dated that complainant will be within time to appeal from it.

4. A complainant applying after two years or more that the case was in litigation to prove a matter within his personal knowledge and concerning his personal conduct may not have the decree against him opened to enable him to give testimony on that point.

5. A decree will not be reopened on the application of the defeated party to permit him to produce an admittedly perjured witness to prove a new basis for relief or to produce a witness admittedly not knowing what he has been testifying about.

6. An application to reopen a case for further proof after rendition of final decree *held* not supported for failure to show due diligence to procure at the trial the testimony relied on.

7. Where a note was an accommodation paper as between the maker and payee, a third person seeking to hold the maker on the note has the burden of proving that he gave consideration for the note.

---

Upon application to file a bill of review, or reopen the case for further proofs.

*Messrs. Hudspeth & Lane,* for the complainant.

*Messrs. Vredenburgh, Wall & Carey,* for the defendant Robert L. Shaw.

GARRISON, V. C.

This suit was commenced by a bill filed on the 16th day of October, 1906. Its object was to foreclose a mortgage made by Robert L. Shaw to William Hogencamp, dated August 27th, 1902. The mortgage, by its terms, was given to secure the payment of a promissory note for $13,000 made by Shaw to Hogencamp. The case was referred to me for trial, and was set down for hearing on the 14th day of May, 1907, on which day the complainant made out his *prima facie* case, which consisted wholly of the proof of the note and mortgage. The defendant Shaw began putting in his proofs, which were to the effect that the note upon which the mortgage was based was without consideration to him, being an accommodation to Hogencamp (excepting to the extent of $1,000), and the complainant, after the defendant had rested, called one witness, Hogencamp, in rebuttal.

After Hogencamp, as a witness on behalf of the complainant, had given considerable testimony, it was considered best to have the case go off in order to enable the complainant to make amendments to the bill. Such amendments were made, and the case again came on for hearing on the 6th day of May, 1908, and the hearing was continued on the seventh, eighth and fourteenth days of that month.

The court announced its conclusions upon the issues involved, and on the 14th day of September, 1908, the form of the decree having been theretofore presented to the complainant by the defendant Shaw, the parties, upon notice by Shaw to the complainant, appeared before the court, and Shaw asked that the decree in the form in which he had drawn it should be signed. Counsel for the complainant stated that there was no objection to the form of the decree, but that they might desire to apply to reopen the case for further proofs; and the court, after making a memorandum that the form was unobjectionable, laid the matter of signing the decree over to September 21st, 1908, to enable counsel for the complainant to present whatever they desired to present in aid of an application to rehear the case.

On the 21st of September it was again laid over at the complainant's request to the 28th day of September, 1908, and on that day the complainant's counsel, stating that they did not

desire to avail themselves of the opportunity to present an application for a rehearing, the final decree, in the form that the complainant stated was unobjectionable to him, was advised.

On the 13th of September, 1909, the complainant filed a petition for leave to file a bill of review. On September 27th, 1909, he filed another such petition; and on November 29th, 1909, he filed a supplemental petition for leave to file a bill of review, or, in the alternative, to have the decree set aside and the case opened for further proofs.

Since the last-named date the court has heard counsel at length at various times, and has permitted them to take as much time as they desired to prepare and file their briefs. Voluminous and comprehensive briefs were carefully prepared and furnished me.

There does not seem to be any dispute concerning the principles of law to be applied; the only dispute is as to the result of their application.

The following authorities show the existing law and procedure upon the matter of granting leave to file bills of review.

"When application is made to file a bill of review upon the discovery of new matter, the rule is that the matter must not only be new, but must be such as the party, by the use of reasonable diligence, could not have known; for if there be any laches or negligence in this respect, that destroys the title to the relief." *Perkins* v. *Partridge, 30 N. J. Eq. (3 Stew.) 560.* See, to the same effect, *Story Eq. Pl.* § *414.*

"Such a bill" (of review) "must rest * * * upon some new matter which has been discovered after the decree, and could not possibly have been used when the decree was made." *Watkinson* v. *Watkinson, 68 N. J. Eq. (2 Robb.) 632.* See, to the same effect, Bacon's ordinances, cited with approval in *Traphagen* v. *Voorhees, 45 N. J. Eq. (18 Stew.) 42.*

In *Feinberg* v. *Feinberg (Vice-Chancellor Grey, 1905), 70 N. J. Eq. (4 Robb.) 424,* it is said: "The rule on applications for a new trial before a vice-chancellor is governed by the principles which are recognized in the law courts in cases of motions for new trials after the verdict of a jury."

The issue of fact which this court tried and determined against

the complainant was with respect to the consideration of the note of Robert L. Shaw to William G. Hogencamp, dated August 27th, 1902. This court found that that note (excepting as to $1,000 thereof) was an accommodation note; that Hogencamp, to whom it was given as an accommodation, got it discounted at the Second National Bank, of which he was president, and subsequently the undisputed testimony showed that Hogencamp had paid the bank and taken up the note and the mortgage, and that the latter, in his hands, was unenforceable.

(I shall leave out of consideration the $1,000 of this mortgage for which there was initially consideration since that is not material in any way in the consideration of the questions involved in this application.)

The result reached, as above stated, was after a prolonged trial, during which every opportunity which the most insistent desire to get at the truth could devise was given the complainant. Hogencamp was on the stand for days. His books and papers and those of the bank and the former officials of the bank who knew anything about the matter, were all completely at the complainant's disposal. So desirous was the court to get at the facts that practically every rule ordinarily enforced with respect to regularity of procedure was disregarded in favor of the complainant. He was permitted to disregard the order of proof; to examine witnesses, and after they had been cross-examined and the strength and force of their testimony in the complainant's favor had been weakened or destroyed, he was permitted to re-examine them as if on direct examination. Witnesses upon most important points were produced by the complainant, examined and cross-examined, and left the stand, and after the lapse of hours, and even in some instances, of days, these same witnesses were permitted to be put back upon the stand by the complainant to give new versions of the same subject-matter, and to add new proofs concerning it. The complainant, during the course of the trial, shifted the theory of his case three or four times, each new basis of his right being destructive of the previous one. He would advance a theory, produce proofs to sustain it, and rest upon it until it was demonstrated to be unstable, and would then abandon that one and bring forward another, which, in

turn, was fortified by proofs and maintained until shown to be untenable.

The various petitions for permission to file a bill of review are based—*first,* on an alleged error in the decree (which it seems gives affirmative relief upon an answer alone) ; and *second,* upon alleged newly-discovered evidence.

As to the first point. The form of the decree was unobjectionable to the complainant, and it may be that he is estopped, in view of his failure to object in time, to now raise this point. In any event, by opening the present decree and permitting the defendant to now file a cross-bill, the completely tried case will afford a proper basis for the decree as made, and the authorities hold that this is proper procedure. *Dayton* v. *Melick* (*Chancellor Runyon, 1876*), *27 N. J. Eq. (12 C. E. Gr.) 362; Fiacre* v. *Chapman* (*Chancellor Runyon, 1880*), *32 N. J. Eq. (5 Stew.) 465; Petty* v. *Young* (*Court of Errors and Appeals, 1887*), *43 N. J. Eq. (16 Stew.) 654; Chancellor* v. *Sieberlich* (*Vice-Chancellor Walker, 1909*), *75 N. J. Eq. (5 Buch.) 501.*

A decree giving affirmative relief to defendant will not be reversed on appeal merely because a cross-bill was not filed where the case was fully tried out on the merits and the evidence warrants the decree. *Vandeveer* v. *Holcomb* (*Chancellor Green, 1864*), *17 N. J. Eq. (2 C. E. Gr.) 90.*

However, I will adopt the following practice so as to accomplish two results: I will, upon this petition (or if not proper upon this, then upon a petition of the defendant Shaw), open the final decree and make such new one on the proofs now in as I think proper, giving the defendant Shaw a right to file a cross-bill, if that is necessary, which new decree will be of such a date that the complainant will be within time to appeal from it, if he so desires. This will give to each side the rights which I think should be preserved to them.

As to the second matter advanced by the complainant, I have determined upon careful consideration of the proper principles to be applied and the facts to which they should be applied, not to grant permission to file a bill of review, or to reopen the case for further proofs.

I shall not attempt to go extensively into the pleadings, proofs, happenings at the trial, and the very voluminous petitions presented by the complainant. If my reasons are good, the facts upon which they are based are easily ascertainable, and are, indeed, scarcely, if at all, debatable.

The complainant is Leonard Richards. He has never appeared personally in the case in any way from its inception to this date. The undisputed, unquestioned testimony adduced by him at the trial from the mouth of Haskins, the former cashier of the bank, of Hogencamp (its former president and repository by reason of personal participation of practically all knowledge concerning this matter), and by the books of the bank, was that the note and mortgage in suit were paid off to the bank in cash by Hogencamp long before the complainant got any title to the said note and mortgage. The note in question at the time of the first hearing was in Hogencamp's, not the complainant's, possession. Now, in so far as complainant's present application and his right to have it granted is based upon the allegation that he got the note and mortgage directly from the bank, and that the latter never parted with the same to Hogencamp, but always held the same as collateral, and that Hogencamp did not pay the bank for the same, I am clearly of opinion that the complainant is not entitled to the slightest consideration. When the complainant produced Hogencamp as his witness at the first hearing on the 14th of May, 1907, Hogencamp swore in answer to the questions of complainant's counsel that he had paid the bank in full for this note and mortgage, and that they were transferred from the bank because of such payment by him to the bank. This was almost exactly a year before the next hearing, and at that hearing Hogencamp swore to exactly the same thing, as did also Haskins, the bank's former cashier. And they pointed out entries in the books of the bank, which they testified demonstrated the truth of their testimony.

Richards, now, more than two years after these facts were first put in evidence by him, and more than a year after they were repeated and reinforced by his witnesses, comes forward and says:

"That is a very material point in my case. It is not true, as sworn to
by my witnesses and demonstrated by them from the books of the bank.
I personally obtained this mortgage directly from the bank by purchase."

This, it will be observed, is with respect to something abso-
lutely within the personal knowledge of the complainant and con-
cerns his own personal conduct; and if important to be proven,
could at any moment during all the two years and more that this
cause was in litigation have been proven by his own oath. For
him to omit, neglect or refuse to prove this matter of personal
knowledge is determinative of his right to now urge it as a basis
for reopening the case. He cannot now be permitted to reopen
the decree for the purpose of permitting him to give testimony
upon this point. I can conceive of no valid argument or reason
which would permit such a practice. The reasons against it are
too obvious to require statement. They immediately arise in
every legally trained mind which considers the question.

The other alleged newly-discovered evidence consists of a letter
and some checks which Hogencamp had, and some books, checks
and the like which the bank had, and another entirely new and
different explanation of the whole transaction by Hogencamp,
without which latter theory and explanation the other proofs
would be meaningless and valueless. In addition to which the
new theory and explanation to be advanced and made by Mr.
Hogencamp requires that he shall unprove a great deal, if not
everything previously sworn to by him, and must demonstrate
that he was wrong in practically everything heretofore sworn to
by him, which contradicts (as most of it does) his present latest
theory.

Laying aside for the moment the consideration of the question
as to whether any of the documentary proofs now sought to be
given such weight are within the rule of newly-discovered evi-
dence applicable in this case, the first consideration must be as to
the reproduction of Hogencamp as a witness. It is admitted by
counsel for the complainant—and if not formally admitted, is
too plain to be denied—that the success of the new effort to prove
a good consideration for the note, and hence, the mortgage, rests,
in the last analysis, upon Hogencamp and Hogencamp's oral tes-
timony. The complainant now offers an entirely novel explana-

tion of the whole transaction; and it is from the mouth of Hogencamp and Hogencamp's testimony concerning the various documentary proofs offered that the truth of this new theory is to be demonstrated. The letter, the various checks, the entries in the books, are all meaningless and without force to support the complainant's case without Hogencamp's oral explanation of them. Hogencamp, as has already been alluded to, has been on the stand for days. From the date of the first hearing, May 14th, 1907, to this time, he has been upon the stand six times, and made two, if not three, affidavits, attached to the petitions. He has constructed for the complainant and had demolished by opposing proofs at least as many as six different and mutually destructive theories. The counsel for the complainant was speaking well within the truth and most charitably when he said that "it appears from the testimony that the said William Hogencamp does not in fact know what he is talking about."

That is exactly the impression that he has made upon my mind upon each of the six occasions upon which he has talked about the matter in this case under oath.

The complainant now asks the court to reopen the case for the purpose of hearing another theory of Hogencamp's—a witness already utterly discredited, from whom the complainant has already had two years' time and six opportunities upon the witness-stand to exhaust all knowledge concerning this case which he may possess—who has already established and disestablished three or four different and mutually repugnant theories concerning the consideration of the note, and who now swears that they were all false and the only true one is contained in his latest explanation. It was certainly mild to say of such a witness that "he does not know what he is talking about." It would not, of course, do for the complainant to admit that Hogencamp, in his many previous and various attempts to show the consideration of this note, had perjured himself—because even the zeal of counsel would stop short of asking the court to reopen a case for the purpose of permitting him to prove newly-discovered facts in the possession of a witness whom he admitted to be a perjurer. But is the complainant any better off, so far as this appeal to the court is concerned, if we agree with him that the trouble with the witness

is not that he consciously prevaricates, but that he really does not know? The best that can be said for him is that in his desire to have the complainant succeed and to make this mortgage enforceable he is willing to swear to anything which would accomplish those purposes. He would swear to any fact to which other facts would fit in and make a case. Since he does not know what the truth is he is not perjuring himself—he is merely swearing about things of which he knows nothing.

One or the other of these two alternatives is open to the complainant. Each leads to identically the same result. I can no more conceive the propriety of reopening a case in order that an admittedly perjured witness may be produced to prove a new basis for judgment than I can for similarly acting with respect to a witness who admittedly does not know what he is talking about.

Now we will return to the question previously passed, as to whether the so-called newly-discovered evidence comes within this rule. Of course the new theory of Hogencamp and what he now says he will swear to does not come within the rule. I shall not waste space in further demonstrating that. But do the letter and the checks now produced by Hogencamp and the checks, slips and books now produced by the bank? I do not think they do. The complainant, it will be remembered, has never appeared in the case at all. He is admittedly represented by the attorneys who represent the bank. His personal participation is limited to affidavits attached to the petitions for review and reopening the case. In such affidavits he twice swears in practically identical language that he acquired the note and mortgage by purchase of the same from the Second National Bank of Jersey City, and "he paid the said bank the purchase price therefor." He did not appear as a witness. He did not, so far as the proofs show, make the slightest personal effort to obtain any proofs to establish his case, and it is not shown that he gave one dollar of consideration for the note and the mortgage he seeks to enforce. His only testimony is that he paid the purchase price therefor without disclosing whether that was anything of value or not.

Such a complainant does not stand in a very favorable light before the court, who, for two years, has shown itself ready and

anxious to administer justice in his behalf and has extended to him not only every right he could possibly claim but every grace within its power. He not only does not show that he personally is out one dollar by reason of the court's decree, but shows affirmatively by his conduct that he is so careless of his rights and of his obligations to the court who is to pass upon his rights that he does not think it worth his while to seek evidence necessary to prove his case.

The sources of proof open to the complainant were the bank and Hogencamp. The bank, by its answer herein, has allied itself in all ways with the complainant, and joined with him in affirming the validity of the note and mortgage in his hands. Hogencamp, from beginning to end, has shown himself in every way that a man could as more than ready, more than willing and most zealously anxious to have the complainant succeed.

Early and late, from the first time he was sworn in the case on May 14th, 1907, to the last time he made an affidavit on November 15th, 1909, this has been his open, notorious and unquestioned attitude.

The complainant, presumably, from the time of the filing of the answer to the original bill, November 16th, 1906—certainly from the time of the first hearing, May 14th, 1907—knew that he must assume and carry the burden of proving that the note in question on which the mortgage was based was enforceable against Shaw in his hands, although at the time it was given it was an accommodation note between Shaw and Hogencamp—in other words, he must prove that a third party had given consideration for this accommodation note and could hold the maker. He knew that Hogencamp and the bank were the sole sources of information open to him; and, as before stated, he knew what has been demonstrated obviously throughout the case, that he was more than welcome to every particle of information and evidence the bank and Hogencamp possessed, whether it was oral or documentary. As before adverted to, every opportunity was given the complainant in his rebuttal to meet the defendant's case. The court even, from time to time, took recesses in order to enable counsel for the complainant to send or go to the bank for more books and papers. Every time that a new explanation

by Hogencamp called for other books and other papers from the bank they were immediately forthcoming.

It seems clear to me that here was a situation in which all the information contained in these two sources (namely, Hogencamp and the bank) was absolutely at the disposal of the complainant. If he had been diligent in preparing his case, all the proofs which he now says he has newly discovered in the possession of the same two witnesses previously produced could have been found and used then. The trouble with the complainant is that he has shown so little interest in the large sum of money represented by this note and mortgage that he has paid no attention to the matter. No sound or believable explanation was presented by him concerning the consideration given for the note. He grasped at the haphazard explanations of Hogencamp and based his case upon each one of them until its instability was demonstrated. Either he or Hogencamp has now thought of the new theory, and evidence from the same sources always open to the complainant are proffered to sustain it.

I do not think there is the slightest successful refutation of the contention that everything now said to be newly discovered is only so because it was not searched for before. That does not make it "newly discovered" within the rule.

The result, therefore, of my most careful consideration of all the circumstances is that the prayer of the petition for leave to file a bill of review must be denied, and the prayer to reopen will be granted only to the extent of reopening to set aside the present decree and to make another conformable to the pleadings and issues as they now are, or as the court may permit them to be amended.

To permit a retrial either by reopening the decree for that purpose, or by permitting the filing of a bill of review, under the circumstances of this case, would be, in my judgment, a violation of fundamental principles respecting litigation, the maintenance of which principles is absolutely essential to the due administration of justice.

I entirely disapprove of viewing litigation in the light of a game where there are pitfalls for the unwary and penalties for the unfortunate; and the court merely sits as an umpire to see

that the rules are enforced. Whatever may once have been the attitude of the courts in this respect, it is not now favorable to so viewing litigation. With due regard to the rules essential to be preserved in formulaing the issues and adducing the legal proofs, and giving each side full opportunity to present its case, the court strives to ascertain the truth and apply the legal remedy applicable thereto. But there are essential rules, without which orderly litigation and the settlement of legal disputes would be impossible. In my view such essential rules would be violated if this case should be reopened upon these petitions.

In conclusion, it will be borne in mind that the complainant is not shown to have a dollar at stake; that the note in question was admittedly and unquestionably, as between the payer and payee thereof, an accommodation of the latter; that the burden of showing that a third party could hold the accommodation maker because of having given consideration for the note was on the complainant; that this was not a case where a complainant was shown innocently to have advanced money to a mortgagor who is seeking by technical defences to prevent the collection of the debt out of the pledged property. The complainant was advised years ago of the defence; came presumably prepared, or was legally required to so come, to meet it; had every possible source of information at his command, and utilized what he pleased of such; was unsuccessful in his attempt to establish his case, and is now seeking to wipe out all this and begin over again, using the same witnesses and the same sources of proof. That he should not be permitted to do this is my fixed conviction.

I will order accordingly.

Counsel for the defendant Shaw met the various allegations advanced by the complainant, and insisted that if all the newly-discovered matters are considered in the light of the previous proofs and the affidavits now produced they would not alter the judgment of the court. I have not considered them. I do not think I should for the reasons above given.

The order in this matter should be settled upon notice.